IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RUSSELL WRIGHT,                                    Case No. 3:22-cv-00151-SB

                Plaintiff,                        **FINDINGS AND**
                                          **RECOMMENDATION**

      v.

VIOLET ENERGY, INC., and DESARI
STRADER,

                Defendants.

_____

**BECKERMAN, U.S. Magistrate Judge.**

        Russell Wright ("Wright") filed this action against Violet Energy, Inc. ("Violet Energy"),

and Desari Strader ("Strader") (together, "Defendants"), alleging claims for (1) failure to pay

wages upon termination in violation of Oregon Revised Statutes ("ORS") § 652.140, (2) failure

to pay minimum wages in violation of ORS § 653.025(2) and the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 206, (3) violation of ORS § 648.135(2), which is part of Oregon's

Assumed Business Names Act ("ABNA"), and (4) breach of contract. Before the Court is

Wright's amended motion for default judgment pursuant to Federal Rule of Civil Procedure

("Rule") 55(b)(2).

*///*

PAGE 1 – FINDINGS AND RECOMMENDATION

The Court has federal question jurisdiction over Wright's FLSA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Wright's state law claims pursuant to 28 U.S.C. § 1367, and not all parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court recommends that the district judge grant in part and deny in part Wright's amended motion for default judgment.

## BACKGROUND

After Defendants failed to appear or otherwise defend, the Clerk of Court entered Defendants' defaults (ECF Nos. 18, 21, 27) in accordance with Rule 55(a). *See* FED. R. CIV. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Wright subsequently moved for default judgment against Defendants.

The Court referred to the assigned district judge its Findings and Recommendation ("F&R") on Wright's initial motion for default judgment.[1] *See Wright v. Violet Energy, Inc.*, No. 3:22-cv-00151-SB, 2024 WL 1993485, at *1-20 (D. Or. Apr. 22, 2024), *findings and recommendation adopted in part and supplemented*, 2024 WL 2207985, at *1-3 (D. Or. May 15, 2024). Wright timely filed an objection. 2024 WL 2207985, at *1. Reviewing de novo the portions of the Court's F&R to which Wright objected, the district judge adopted in part and supplemented the Court's F&R, dismissed Wright's FLSA claim, declined to exercise supplemental jurisdiction over Wright's state law claims, dismissed without prejudice Wright's

---

[1] In the Background and Part I of the Discussion in its F&R, the Court describes the facts and procedural history and certain applicable legal standards. Unless necessary or otherwise noted, the Court does not repeat that discussion here. *See Lunceford v. Carson*, No. 3:22-cv-1387-SI, 2023 WL 9179204, at *1 n.1 (D. Or. July 28, 2023) ("The Court's previous Order granting in part and denying in part [the plaintiff's] motion for default judgment discusses the factual background of this case and the applicable legal standards. . . . There is no need to repeat those statements").

first amended complaint, and denied Wright's motion for default judgment. *Id.* at *1-3. The district judge explained that if Wright "believe[d] he [could] cure the deficiencies identified in [the Court's F&R] and [the district judge's] Order, consistent with Rule 11, [Wright] may file a Second Amended Complaint and Amended Motion for Default Judgment by May 31, 2024." *Id.* at *3.

Consistent with the district judge's Order, Wright timely filed a second amended complaint (ECF No. 39) and an amended motion for default judgment (ECF No. 40), the latter of which is now before the Court.

## LEGAL STANDARDS

"In reviewing a [motion for] default judgment, [a] court takes 'the well-pleaded factual allegations' in the complaint 'as true.'" *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (quoting *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992)). A court, however, does not accept as true factual allegations "relating to the amount of damages." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)). Nor does a court accept as "admit[ted] facts that are not well-pleaded or [amount to] conclusions of law." *Huynh*, 503 F.3d at 854 (simplified). Thus, "[n]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps*, 980 F.2d at 1267 (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam) (citations omitted). A court's "starting point" is "the general rule that default judgments are ordinarily disfavored[, as] [c]ases should be decided upon their merits whenever reasonably possible." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (quoting *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)). A

PAGE 3 – FINDINGS AND RECOMMENDATION

court "then look[s]" to the factors that the Ninth Circuit "set[] out [in *Eitel*] to guide [a] court's determination regarding the appropriateness of granting a default judgment[.]" *Huynh*, 503 F.3d at 852 (citing *Eitel*, 782 F.2d at 1471-72); *see also NewGen*, 840 F.3d at 616 (identifying the "starting point" and how a court "then look[s] to the [*Eitel*] factors"). The seven "*Eitel*" factors are:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72 (citation omitted); *see also NewGen*, 840 F.3d at 617 (explaining that "[w]hile there [was] room to disagree whether default was warranted," the Ninth Circuit's "role [on appeal was] not to second guess the district court's weighing of the *Eitel* factors," and "thus conclud[ing] that the district court's decision to enter default judgment was not an abuse of discretion").

## DISCUSSION

Wright timely filed a second amended complaint and amended motion for default judgment. The Court recommends that the district judge grant in part and deny in part Wright's amended motion.

## I.    THRESHOLD MATTERS

### A.    Applicable Law

"A district court 'has an affirmative duty' to determine whether it has subject-matter jurisdiction and personal jurisdiction over the defendant before entering a default judgment." *Durland v. Straub*, No. 3:20-cv-00031-IM, 2022 WL 2704169, at *2 (D. Or. July 12, 2023) (quoting *Tuli v. Republic of Iraq (In re Tuli)*, 172 F.3d 707, 712-13 (9th Cir. 1999)). A default judgment is void if a district court lacks subject matter or personal jurisdiction, or the defendant

has not been served in accordance with Rule 4. *See Chambers v. Knight*, No. 20-56141, 2021
WL 4811360, at *1 (9th Cir. Oct. 15, 2021) (subject matter jurisdiction); *In re Tuli*, 172 F.3d at
712 (personal jurisdiction); *Bank of N.Y. Mellon v. Loyo-Morales*, No. 21-16041, 2022 WL
1616980, at *1 (9th Cir. May 23, 2022) ("A federal court is without personal jurisdiction over a
defendant unless the defendant has been served in accordance with [Rule] 4." (quoting *Benny v.
Pipes*, 799 F.2d 489, 492 (9th Cir. 1986))); *Herbalife Int'l of Am., Inc. v. Healthy1 Inc.*, 830 F.
App'x 801, 803 (9th Cir. 2020) ("A default judgment is void if the defendant 'has not been made
a party by service of process.'" (quoting *Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th
Cir. 1992))).

B.    **Analysis**

1.    **Subject Matter Jurisdiction**

The Court has federal question jurisdiction over Wright's FLSA claim pursuant to 28
U.S.C. § 1331 and supplemental jurisdiction over Wright's state law claims pursuant to 28
U.S.C. § 1367. *See Durland*, 2022 WL 2704169, at *2 (noting that the court had "federal
question jurisdiction over [the] action pursuant to 28 U.S.C. § 1331, as [the] action [was] brought
under the FLSA," and "[p]ursuant to 28 U.S.C. § 1367, [the court had] supplemental jurisdiction
over the claims based on Oregon law, as they [were] 'part of the same case or controversy' as the
FLSA claim") (citations omitted); *see also Cruz v. Quang*, No. 13-cv-00181, 2015 WL 348869,
at *3 (N.D. Cal. Jan. 23, 2015) ("This case is brought under the FLSA and various California
wage and hour statutes. Accordingly, there is federal question and supplemental jurisdiction over
the action.").

2.    **Personal Jurisdiction and Service of Process**

Wright continues to allege sufficient facts to support the Court's exercise of specific
personal jurisdiction over Defendants. *See Wright*, 2024 WL 1993485, at *12 (describing

PAGE 5 – FINDINGS AND RECOMMENDATION

Wright's allegations regarding Defendants' forum-related activities). As detailed in Part III.B-D. of the Background in the Court's prior F&R, Wright has also demonstrated that he adequately served Defendants. *Id.*

## II.    *EITEL* FACTORS

The Court finds that on balance, the *Eitel* factors support entry of default judgment against Defendants.

### A.    Prejudice to Wright

In evaluating whether to enter default judgment, a court first considers "the possibility of prejudice to the plaintiff[.]" *NewGen*, 840 F.3d at 616 (quoting *Eitel*, 782 F.2d at 1471). Wright asserts that "prejudice results [here] from the unavailability of any remedy for [his] claims if default judgment is not entered." (Pl.'s Am. Mot. Default J. ("Pl.'s Am. Mot.") at 5, ECF No. 40.) The Court agrees that given Wright's lack of alternative means by which to resolve his claims and Defendants' failure to participate in this suit, the first *Eitel* factor weighs in favor of granting Wright's motion. *See Garcia v. Pacwest Contracting LLC*, No. 3:12-cv-01930-SI, 2016 WL 526236, at *3 (D. Or. Feb. 9, 2016) (finding that the first *Eitel* factor "weigh[ed] in favor of granting" the plaintiffs' motion for default judgment because they had "no alternative means by which to resolve their . . . claims against [the defendant]" (citing *Minn. Life Ins. Co. v. Gomez*, No. 14-00866, 2015 WL 4638351, at *4 (D. Ariz. Aug. 4, 2015))); *Durland*, 2022 WL 2704169, at *1 ("Given [the] [d]efendants' failure to cooperate in this lawsuit and [the] [p]laintiffs' lack of alternative avenues of recovery, [the] [p]laintiffs would suffer prejudice if default judgment is not entered.").

### B.    Substantive Merits and Pleading Sufficiency

The second and third *Eitel* factors are "the merits of [the] plaintiff's substantive claim, [and] the sufficiency of the complaint[.]" *NewGen*, 840 F.3d at 616 (quoting *Eitel*, 782 F.2d at

1471). "These two factors are often analyzed together and require courts to consider whether a plaintiff has state[d] a claim on which [it] may recover." *Dunlap*, 2022 WL 2704169, at \*3 (quoting *Viet. Reform Party v. Viet Tan-Viet. Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019)); *see also Garcia*, 2016 WL 526236, at \*3 (explaining that "[t]he Ninth Circuit has suggested that [the second and third *Eitel*] factors require that a plaintiff's allegations 'state a claim on which the [plaintiff] may recover'" (quoting *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

### 1.    Wright's Claims

Wright moves for entry of default judgment on all four of his claims: (1) failure to pay wages upon termination in violation of ORS § 652.140, (2) failure to pay minimum wages in violation of ORS § 653.025(2) and the FLSA, 29 U.S.C. § 206, (3) violation of ORS § 648.135(2), which is part of Oregon's ABNA, and (4) breach of contract. (Pl.'s Am. Mot. at 6-7.) The Court analyzes each claim below. In doing so, the Court "takes 'the well-pleaded factual allegations' in the complaint 'as true.'" *Huynh*, 503 F.3d at 854 (quoting *Cripps*, 980 F.2d at 1267). The Court, however, does not accept as true factual allegations "relating to the amount of damages," *Geddes*, 559 F.2d at 560 (citing *Pope*, 323 U.S. at 12), or accept as "admit[ted] facts that are not well-pleaded or [amount to] conclusions of law." *Huynh*, 503 F.3d at 854 (simplified).

### a.    ORS § 652.140

ORS § 652.140 provides that "when an employment relationship has ended, all wages earned and unpaid become due and payable to the employee within the period set by the statute." *Durland*, 2022 WL 2704169, at \*6 (citing OR. REV. STAT. § 652.140(1)-(2)). Wright alleges that he started working as Defendants' employee on October 1, 2018, he submitted his resignation and two weeks' notice to Defendants on April 16, 2021, because Defendants failed to pay his

salary and benefits, and "to date, Defendants have failed to . . . pay [him] any wages or commissions, let alone pay them by April 30, 2021," even though his "counsel sent written notices of demand for nonpayment to Defendants." (Second Am. Compl. ¶¶ 5, 8-9, 11, 13, 17-19, 22-26, ECF No. 39.)

Taking Wright's well-pleaded factual allegations as true, the Court finds that Wright has stated a claim on which he may recover. *See Rubi v. Dynamic Change Inc.*, No. 3:17-cv-01531-HZ, 2019 WL 720977, at *3 (D. Or. Feb. 20, 2019) (evaluating a motion for default judgment and finding that the plaintiff adequately alleged a claim under ORS § 652.140, as his "employment terminated on or about August 12, 2016, and [the] [d]efendants ha[d] yet to pay him all wages earned"); *see also Durland*, 2022 WL 2704169, at *6 (addressing entry of default judgment on the plaintiffs' claims under ORS § 652.140, noting that the "[p]laintiffs allege[d] that they ended their employment with [the] [d]efendants on August 21, 2019 and [they] ha[d] yet to be paid for their travel time," and finding that "[t]he second and third *Eitel* factors [we]re satisfied").

### b.    ORS § 653.025 and 29 U.S.C. § 206

"Pursuant to both [ORS §] 653.025[] and 29 U.S.C. § 206, employees are entitled to be paid for each hour of work that they are gainfully employed, and no employer may pay wages at a rate lower than what is enumerated in the statute." *Durland*, 2022 WL 2704169, at *5; *see also Rubi*, 2019 WL 720977, at *3 (addressing 29 U.S.C. § 206 and ORS § 653.025, and noting that both the FLSA and Oregon law mandate payment of a minimum wage). As explained below, Wright plausibly alleges that Defendants violated both federal and Oregon minimum wage requirements.

The Court previously explained that Wright's FLSA minimum wage claim was deficient because Wright was required but failed to "allege with specificity the details of at least one week

in which he worked hours for which he was paid nothing, thereby alleging that his employer failed to pay him a minimum wage." *See Wright*, 2024 WL 2207985, at *1-2 (describing and adopting this explanation); *Wright*, 2024 WL 1993485, at *13-16 (addressing the claim and controlling circuit precedent (citing *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 645-46 (9th Cir. 2015))). Contrary to this standard, Wright "simply allege[d] that he was offered employment, he accepted, the salary he was offered, the date his employment allegedly started, and that he was never paid," and did "not allege that he worked any hours during any specific week." *Wright*, 2024 WL 2207985, at *1 (footnote omitted). Thus, Wright failed to state a claim under the FLSA, as he did "not allege that he actually worked any hours for which he was not paid." *Id.* at *1-2.

Consistent with the Court's guidance, Wright timely filed a second amended complaint and specifically identified the weeks in which he worked "at least one day" as Defendants' salaried employee and was not paid any wages, let alone minimum wages. (Second Am. Compl. ¶¶ 5, 8-9, 11, 13, 17-19, 27-37.) Both the FLSA and Oregon law mandate payment of a minimum wage. *See Rubi*, 2019 WL 720977, at *2 (citing *Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999), 29 U.S.C. § 206, and OR. REV. STAT. § 653.025). Thus, accepting as true Wright's factual allegations, Wright plausibly alleges that Defendants violated the FLSA's and Oregon law's minimum wage requirements. *See id.* at *2-3 (observing that the plaintiff alleged that he was "paid intermittently, often less than the agreed-upon rate," he occasionally was "not paid at all," and he was "paid less than the federal and Oregon minimum wages for hours worked," and therefore adequately alleged that the defendants "violated the FLSA and Oregon's wage and hour laws").

///

PAGE 9 – FINDINGS AND RECOMMENDATION

          c.       **Oregon's ABNA**

Under the ABNA, "a person must register an assumed business name in order to conduct business in that assumed name." *Covelli v. Avamere Home Health Care LLC*, No. 3:19-cv-486-JR, 2020 WL 6395448, at *5 (D. Or. Nov. 2, 2020) (citing OR. REV. STAT. § 648.007); *see also* OR. REV. STAT. § 648.010(1) ("Each person who will carry on, conduct or transact business under an assumed business name shall sign an application to register the assumed business name and shall submit the application to the Office of the Secretary of State, with the fee prescribed by this chapter. All of the persons who will carry on, conduct or transact a single business under an assumed business name shall file a consolidated application to register the assumed business name."). The ABNA "provides for statutory damages of $500 or actual costs that 'the plaintiff reasonably incurred to ascertain the real and true name of the defendant' when a cause of action arises out of business the defendant conducted as an unregistered entity in violation of the ABNA." *Covelli*, 2020 WL 6395448, at *5 (quoting OR. REV. STAT. § 648.135(2)). "The court may award reasonable attorney fees to the prevailing party in an action under [the ABNA]." OR. REV. STAT. § 648.135(2).

Wright alleges that "[a]t all material times of [his] employment until October 19, 2020, Defendants did not have a current registration on file with the Oregon Secretary of State for Violet Power" but "were conducting, transacting, or carrying [on] business in Oregon using this name[.]" (Second Am. Compl. ¶¶ 13, 40.) Wright in turn alleges that Defendants violated the ABNA, thus entitling him to statutory damages or actual costs and reasonable attorney's fees. (*Id.* ¶¶ 40-41.)

Given these allegations, the Court finds that Wright states a claim against Defendants for violation of Oregon's ABNA. *See Schaefer v. Invents Co. LLC*, No. 3:17-cv-00559-SB, 2017 WL 6887099, at *1, *3 (D. Or. Dec. 15, 2017) (noting at the default judgment stage that the

plaintiff alleged that the "[d]efendant was doing business in Oregon under an unregistered name" and "request[ed] $500 in statutory damages arising out of [the] [d]efendant's failure to register its business name, in violation of Oregon law," and determining that the "[p]laintiff's request [was] authorized by [ORS §] 648.135"), *findings and recommendation adopted*, 2018 WL 358498, at *1 (D. Or. Jan. 10, 2018); *see also Wright*, 2024 WL 1993485, at *1 n.2 (observing that "a plaintiff may sue an unregistered entity only until a plaintiff realizes the entity is unregistered and a plaintiff then must determine the real and true name of the defendant," and that Wright discovered the registration at issue before filing suit (quoting *Covelli*, 2020 WL 6395448, at *5)).

### d.    Breach of Contract

"The Oregon Supreme Court has stated that 'an offer containing a promise for a consideration to do an act which a person has a lawful right to do, made by one person to another, followed by an unqualified and unequivocal acceptance by the person to whom it is made . . . creates a contract.'" *Garcia*, 2016 WL 526236, at *3 (quoting *C.R. Shaw Wholesale Co. v Hackbarth*, 102 Or. 80, 94 (Or. 1921)). Wright states a breach of contract claim against Defendants.

Wright's breach of contract claim is based on contracts related to his roles as Defendants' employee and independent contractor. In support, Wright alleges that "[he] and Defendants entered into an employment contract on or about August 28, 2018, [which] paid [him] $238,000 per year," and that "Defendants never paid [him] any of the salary under that contract, and as such Defendants breached the contract and owe [him] wages of $617,884.62." (Second Am. Compl. ¶¶ 43-44, 47-48.) Furthermore, Wright alleges that (1) he "entered into an independent contractor agreement" with Defendants, (2) before and during his time as Defendants' employee, he worked for Defendants as an independent contractor performing "business development"

services, (3) he performed twenty-five, eighteen, and eighteen hours of independent contract

work for Defendants in November 2018, January 2019, and March 2019, respectively, (4) on

April 1, 2019, he provided Defendants with a contract allowing him to "transition [from his]

employment role . . . into the independent contractor role" because he "ha[d] never been paid his

W-2 wages," but "Defendants never signed the contract," (5) Defendants only paid him "$20,000

as 1099 income for the consulting agreement in which [he] also provided services as an

independent contractor," (6) "Defendants never paid [him] for [any of his] work, except [the]

total of $20,000 as part of the independent contractor services," and (7) he is "owed $60,000 in

past due amounts . . . under the consulting agreement with Defendants[, which] pre-dated [his]

employment with Defendants."[2] (Second Am. Compl. ¶¶ 9-11, 14-16, 19, 45-48; Wright Decl.

¶¶ 3-17.)

---

[2] Wright attaches the invoices for an outstanding balance of $60,000 and twenty-five, eighteen, and eighteen hours of "independent contractor . . . consulting work" he performed for Defendants in November 2018, January 2019, and March 2019, respectively. (Decl. Russell Wright Supp. Pl.'s Am. Mot. Default J. ("Wright Decl.") ¶¶ 9-10, ECF No. 41; *id.* Ex. 2 at 1-6.) Wright's counsel also submitted the "personnel file" he received from Defendants' former counsel. (Decl. Michael Stevens Supp. Pl.'s Am. Mot. Default J. ("Stevens Decl.") ¶ 4, ECF No. 42.) Wright's personnel file includes, among other things, a consulting agreement that he provided to Defendants on or about June 1, 2019, the invoices that Wright attached to his declaration, and employment-related documents. (*Id.* Ex. 8 at 3-27.) The consulting agreement, which only Wright signed, addresses Wright's "previous Consulting Agreement dated September 1, 2018," and Defendants' "outstanding and overdue invoiced balance of $60,000[.]" (*Id.* at 3-6.) The employment-related documents in Wright's personnel file include (1) Wright's April 16, 2021 resignation letter, which discusses how Wright accepted and performed in accordance with Defendants' August 2018 offer to serve as Defendants' Vice President of Strategic Development with an annual salary of $238,000, and how Defendants "made numerous promises" but Wright had "received none of [his agreed-upon] salary" or employment benefits, (2) a Direct Deposit Authorization, which Wright signed and dated January 15, 2021, (3) a U.S. Department of Homeland Security Employment Eligibility Verification form, which Wright and Defendants' controller signed and dated January 18, 2021, (4) a Form W-4, Employee's Withholding Certificate, which Wright signed and dated January 15, 2021, and (5) a portion of a "Zions Bank" record, which appears to be dated February 28, 2019, pertain to Violet Energy, and reference two "02/20" "wire/out[s]" of $20,000 to "BNF Russ Wright." (*Id.* Ex. 8 at 7-28) (all caps omitted).

PAGE 12 – FINDINGS AND RECOMMENDATION

Based on the foregoing allegations, the Court finds that Wright states a breach of contract claim against Defendants. *See Garcia*, 2016 WL 526236, at *3 (noting that the plaintiff alleged that the defendant "promised to pay a rental fee to [him] for tools [he] purchased and used on the construction project," he "accepted th[e] offer," and he "requested that [the defendant] reimburse him as promised, but [the defendant] failed to do so," finding that the plaintiff "properly stated a claim for breach of contract" against the defendant, and concluding that the second and third *Eitel* factors weighed in favor of granting the plaintiff's motion for default judgment); *Rubi*, 2019 WL 720977, at *3 ("[The parties] had an oral contract for [the] [p]laintiff to perform work and be paid $12.00 an hour, every two weeks. . . . [The] [p]laintiff timely performed the work. . . . [The] [d]efendants failed to pay . . . the agreed-upon hourly rate for every hour that [the plaintiff] worked. . . . Therefore, [the] [d]efendants breached the contract.") (citations omitted).

### 2.    Conclusion

For these reasons, the second and third *Eitel* factors (the merits of Wright's substantive claims and sufficiency of Wright's second amended complaint) weigh in favor of entry of default judgment.

### C.    The Sum of Money at Stake

The fourth *Eitel* factor is "the sum of money at stake in the action[.]" *NewGen*, 840 F.3d at 616 (quoting *Eitel*, 782 F.2d at 1471). In evaluating the sum of money at stake, courts have considered whether the plaintiff's damages request was reasonable given the alleged gravity of the defendant's conduct. *See Bds. of Trs. of AGC-Operating Eng'r Health & Welfare Fund v. K.F. Jacobsen & Co, Inc.*, No. 3:19-cv-0621-SI, 2019 WL 4567578, at *2 (D. Or. Sept. 20, 2019) (stating that "the amount [at stake was] not unreasonable given the seriousness of [the] [d]efendant's conduct"); *Garcia*, 2016 WL 526236, at *3 (finding that "in relation to the

seriousness of th[e] alleged conduct, the sum of money at stake in th[e] action [did] not weigh against granting [the] [p]laintiffs' motion for default judgment"); *see also Sanchez v. MCJ Facility Sols., Inc.*, No. 3:21-cv-48-SI, 2022 WL 1210947, at *3 (D. Or. Apr. 25, 2022) (noting that the plaintiff sought "$43,519.82 in backpay and $100,000 in emotional distress damages, which [was] not an excessively large amount," and later reducing the "damages award [to] $112,364.67").

Courts have also compared the plaintiff's damages request to other cases. *See, e.g.*, *Garcia*, 2016 WL 526236, at *3 (comparing the case to *Eitel*'s finding that "the district court did not abuse its discretion in denying a motion for default judgment where the plaintiff sought nearly $3 million in damages from the defendant" (citing *Eitel*, 782 F.2d at 1472)); *Durland*, 2022 WL 2704169, at *7 (stating that "the default judgment requested [wa]s more than nominal, but less than that sought in previous cases denying default judgment," observing that *Eitel* "not[ed] almost $3 million sought in damages as a factor weighing against granting default judgment," and finding that "the fourth *Eitel* factor favor[ed] default judgment" (citing *Eitel*, 782 F.2d at 1472)).

As discussed in detail below, Wright requests a total damage award of $1,557,130.22. (Pl.'s Am. Mot. at 10.) Although the sum of money at stake in this action is significant, Wright has cured the deficiency the Court previously identified in his complaint and a damages award in this range is not unreasonable given Wright's allegations and supporting materials regarding his performance of multiple roles, his yearly salary of $238,000, and the extended time period in which Defendants failed to pay him any wages or benefits. Thus, the Court finds that on the current record, the sum of money at stake does not weigh against granting Wright's motion for default judgment. *Cf. NewGen*, 840 F.3d at 616-17 (reflecting that the Ninth Circuit stated that it

was "satisfied that diversity jurisdiction exist[ed]" and affirming the district court's "damage

award of $1,483,075.84," which consisted of "$783,558.43 in damages for breach of [a]

consulting agreement" and "$699,517.41 for unpaid commissions owed under [an] Affiliate

Agreement"); *see also Lunceford*, 2023 WL 9179204, at *1 (noting that the plaintiff "file[d] a

supplemental motion with additional evidence to cure the deficiencies identified in his [initial]

motion for default judgment," stating that "the sum the [c]ourt [found] supported [was] not an

excessively large amount," and awarding "treble [the plaintiff's] $81,320 loss of use damages,"

which were based on the 428 days in which he was deprived of the "occasional use" of "a classic

Mustang car").

### D.    The Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor is "the possibility of a dispute concerning material facts[.]"

*NewGen*, 840 F.3d at 616 (quoting *Eitel*, 782 F.2d at 1471-72). On several occasions, district

courts in this circuit have noted that (1) "[t]he fifth [*Eitel*] factor . . . weighs in favor of [entering]

default judgment when the claims in the complaint are well-pleaded[, and (2)] . . . '[w]here the

[p]laintiff's complaint is well-pleaded and the defendant makes no effort to properly respond, the

likelihood of disputed facts is very low.'" *Durland*, 2022 WL 2704169, at *7 (quoting *Joe Hand*

*Prods. v. Holmes*, No. 2:12-cv-00535-SU, 2015 WL 5144297, at *7 (D. Or. Aug. 31, 2015) and

*3M Co. v. Phx. Auto. Refinishing Co., Ltd.*, No. 17-cv-00649, 2018 WL 1989536, at *5 (C.D.

Cal. Apr. 25, 2018)); *Rubi*, 2019 WL 720977, at *3 (making the same observations and citing

*Joe Hand* in support).

Wright's sole federal claim is now well-pleaded, as Wright cured the deficiency

underlying the Court's recommendation that the district judge deny Wright's initial motion for

default judgment. *See Wright*, 2024 WL 2207985, at *2 (explaining that this Court "concluded

that [Wright] failed to state claim under the FLSA, '[e]ven setting aside the offer letter's

PAGE 15 – FINDINGS AND RECOMMENDATION

reference to the exempt Vice President of Strategic Development position with a $238,000

annual salary'"); *see also Boon v. Canon Bus. Sols., Inc.*, 592 F. App'x 631, 632 (9th Cir. 2015)

("*Landers*, for the first time, articulated this [circuit's] requirements for stating [an FLSA] wage

claim under *Twombly* and *Iqbal*."); *Boyack v. Regis Corp.*, 812 F. App'x 428, 431 (9th Cir.

2020) (noting that *Landers* addressed what a plaintiff must allege "at minimum" to "state

plausible claims for unpaid overtime and minimum wages under the [FLSA]" (citing *Landers,*

771 F.3d at 646)). Wright's state law claims, which the Court did not previously address, *see*

*Wright*, 2024 WL 2207985, at *2, are also well-pleaded. These facts suggest that the fifth *Eitel*

factor weighs in favor of entering default judgment.

      There may be a dispute about material facts here. (*See* Stevens Decl. Ex. 9 at 2, reflecting

that in an email to Wright's counsel dated July 16, 2021, Defendants' then-counsel stated that

Wright rejected and countered Defendants' employment offer, "there was never an agreement to

hire [Wright] in 2018 or otherwise," and "Wright wholly failed to provide much meaningful

work . . . since 2018"); *Wright*, 2024 WL 2207985, at *1 n.1 & n.2 (noting these disputed

issues). Nevertheless, Wright's claims are based on well-pleaded factual allegations, the Court

must accept such allegations as true, and Defendants have not filed any responsive pleading. *See*

*Lunceford*, 2023 WL 9179204, at *3 ("There may be a dispute about material facts, but the

[c]ourt must accept as true [the] [p]laintiffs allegations, and [the] [d]efendants have not filed a

responsive pleading."); *Sanchez*, 2022 WL 1210947, at *3 (same). Thus, the Court finds that on

the current record, the fifth *Eitel* factor does not weigh against granting Wright's amended

motion for default judgment.

      **E.    Excusable Neglect**

      The sixth *Eitel* factor is "whether the default was due to excusable neglect[.]" *NewGen,*

840 F.3d at 616 (quoting *Eitel*, 782 F.2d at 1472). It is unlikely that Defendants' default was due

to excusable neglect here. Wright's counsel and Defendants' then-counsel discussed Wright's claims and potential suit before he filed this action and Wright's counsel has demonstrated that he adequately served Defendants. Despite these facts, Defendants have not appeared or otherwise responded. *See K.F. Jacobsen & Co.*, 2019 WL 4567578, at *2 ("It is unlikely that the default was due to excusable neglect—[the [d]efendant was served with process but has not appeared or responded in any form."); *Rubi*, 2019 WL 720977, at *4 (noting that the plaintiff "demonstrated due diligence to serve" the defendant and "attempt[ed] several methods of service," and finding that "the likelihood of excusable neglect [was] remote") (simplified). For these reasons, the Court finds that the sixth *Eitel* factor weighs in favor of granting Wright's amended motion for default judgment.

### F.    The Strong Policy Favoring Decisions on the Merits

The seventh *Eitel* factor is "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *NewGen*, 840 F.3d at 616 (quoting *Eitel*, 782 F.2d at 1472). "[A]lthough public policy disfavors default judgments, judgment on the merits is impossible when Defendants have not appeared." *Lunceford*, 2023 WL 9179204, at *3; *Sanchez*, 2022 WL 1210947, at *3 (same). Given this reality, the Court finds that on the current record, the seventh *Eitel* factor does not weigh against granting Wright's amended motion for default judgment.

### G.    Conclusion

On balance, the Court finds that the *Eitel* factors weigh in favor entering default judgment against Defendants.

## III.    DAMAGES

Having weighed the *Eitel* factors, the Court turns to Wright's allegations relating to damages. As discussed above, "[a]lthough [a court] accepts as true [the plaintiff's] well-pleaded

factual allegations, [a court] does not fully accept [the plaintiff's] allegations relating to damages." *Sanchez*, 2022 WL 1210947, at *3 (citing *Huynh*, 503 F.3d at 854). Courts have also recognized that a defendant's failure to participate in a suit should not hinder a plaintiff's ability to prove or recover damages. *See Durland*, 2022 WL 2704169, at *7 ("[The] [p]laintiffs do not have complete time and pay records from their employment with [the] [d]efendants, and [the] [d]efendants have failed to respond to their discovery requests. Thus, [the] [d]efendants' failure to participate in this action should not stymie [the] [p]laintiffs from proving their damages."); *Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. United Constr. & Maint. Inc.*, No. 14-cv-03483, 2015 WL 13915733, at *6 (C.D. Cal. Apr. 1, 2015) (finding sufficient the plaintiff's estimate of damages because the defendant's "failure to keep records . . . precluded a more precise calculation").

### A. Unpaid Wages

Wright filed declarations and exhibits in support of his requested damages. Wright's claimed damages include $617,884.62 in unpaid wages. (*See* Pl.'s Am. Mot. at 7, 9-10, stating that Wright is owed "regular wages in the amount of $617,884.62" or "$617,884.62 in back wages," citing paragraphs twenty-six and forty-four of the second amended complaint, and concluding with a "summar[y]" of Wright's requests, including for "an award of . . . wages owed in the amount of $617,884.62"; *see also* Second Am. Compl. ¶¶ 9-11, 18, 22-26, 32, 43-44; *id.* at 12, alleging that Defendants were required but failed to pay Wright "regular wages . . . in an amount of $617,884.62"). Wright calculated his unpaid wages total by (1) dividing his agreed-upon yearly salary of $238,000 by fifty-two weeks, which "equals $4,576.92307692 per week," and (2) multiplying this weekly salary amount by his "135 . . . unpaid workweeks," which produces a total of $617,884.62 in unpaid wages. (Second Am. Compl. ¶¶ 11, 18, 22-26, 32, 43-44.)

PAGE 18 – FINDINGS AND RECOMMENDATION

Based on its review of Wright's declarations and exhibits, the Court concludes that

Wright is entitled to $617,884.62 in unpaid wages.[3] *See Hunter v. Dutch Gold Res., Inc.*, No.

1:11-cv-01450-CL, 2012 WL 3614336, at *2-4 & n.3 (D. Or. Aug. 20, 2012) (granting the

plaintiff's motion for default judgment, noting that the plaintiff was "paid a monthly salary of

$10,000, not an hourly wage" and awarding the plaintiff the amount he was allegedly owed in

"unpaid salary"); *Rubi*, 2019 WL 720977, at *2-5 (concluding at the default judgment stage that

the plaintiff adequately alleged that the defendants violated "federal and Oregon minimum

wage . . . laws" and ORS § 652.140, and finding that the plaintiff was "entitled to $3,715.97 in

unpaid wages"); *Villegas v. Dubiel*, No. 1:23-cv-00904-CL, 2024 WL 1993988, at *1-5 (D. Or.

Apr. 23, 2024) (observing at the default judgment stage that the plaintiff, who worked fifty-seven

hours but received no "payment at all," asserted claims for breach of contract, violation of

---

[3] Wright's well-pleaded factual allegations and the record before the Court suggest that Defendants are jointly and severally liable for all of Wright's damages. (*See* Second Am. Compl. ¶¶ 5, 9, 11-12, 19, 22-48, alleging that Wright worked for both of the named defendants as an employee and independent contractor, Strader offered Wright the position, salary, and benefits package, Defendants never paid Wright any wages for the work he performed, Wright's claims are based on Defendants' actions, and Strader is "personally liable for the back wages needed to make the wages meet the minimum wage"; Wright Decl. ¶ 18, declaring under penalty of perjury and on information and belief that "Strader used company funds to pay for her personal expenses, including her vehicle . . . [and] residence"); *see also Wright*, 2024 WL 1993485, at *1-3 (addressing case filings reflecting that Strader served as the company president and secretary, operated the company out of the same corporate and personal address that she maintained with Oregon Secretary of State and Department of Motor Vehicles, and used company funds to pay to cover personal expenses). In *Durland*, the district court addressed a comparable situation and similarly noted that the individual and corporate defendants were jointly and several liable for the plaintiffs' damages. *See* 2022 WL 2704169, at *8 & n.11 ("Th[e] [c]ourt notes that both Straub and Straub Construction are jointly and severally liable for the damages because Straub was a joint employer with Straub Construction. In determining that an owner or officer's economic control over a company made the officer an 'employer' individually liable under wage and hour law, courts acknowledge the economic reality that, in such cases, the employment decisions of the business entity are indistinguishable from the employment decisions of individual officers. . . . Straub was the owner, registered agent, and sole manager of Straub Construction. . . . Straub also gave the Plaintiffs all of their assignments—he told them what time to put on their time sheets, he hired them, he fired them, and he controlled how much they were paid.") (simplified).

federal and Oregon minimum wage laws, and failure timely to pay wages upon termination under ORS § 652.140, and finding that the plaintiff was entitled to unpaid wages "calculated under a contract theory," meaning the "agreed upon contact rate" of $15.00 per hour multiplied by the fifty-seven "hours of unpaid labor"), *findings and recommendation adopted*, 2024 WL 2153607, at *1 (D. Or. May 14, 2024).

###### B.      Final Paycheck Penalty

Wright seeks $27,460.80 as a "final paycheck penalty" under ORS § 652.150. (*See* Pl.'s Am. Mot. at 10, showing that Wright "summarize[d]" his requests for damages and related matters). Wright arrived at this figure by (1) dividing his annual salary of $238,000 by 2,080 hours (i.e., the sum of forty hours a week multiplied fifty-two weeks per year), which results in an hourly rate of $114.42, (2) multiplying his hourly rate of $114.42 by the eight hours per workday, which amounts to $915.36 in daily pay, and (3) multiplying his daily pay of $915.36 by thirty days, which produces a final penalty wage total of $27,460.80. (*See* Second Am. Compl. ¶¶ 11, 22-26, alleging that Defendants violated ORS § 652.140, that Wright's "salary of $238,000 per annum . . . converts to $114.42 per hour," and that under ORS § 652.150, Wright is entitled "a penalty wage of [eight] hours per day at the rate of $114.42 per hour for [thirty] days, or $27,460.80").

"Pursuant to [ORS §] 652.140, [a plaintiff is] entitled to their unpaid wages upon leaving [a defendant's] employ." *Durland*, 2022 WL 2704169, at *8. If the plaintiff's "wages remain unpaid more than [thirty] days after [his] termination, [ORS §] 652.150 entitles [the plaintiff] to [thirty] days of penalty wages." *Id.* With respect to penalty wages, ORS § 652.150 provides that "if an employer willfully fails to pay any wages or compensation of any employee whose employment ceases, . . . then, as a penalty for the nonpayment, the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate for eight hours per

PAGE 20 – FINDINGS AND RECOMMENDATION

day[.]"[4] OR. REV. STAT. § 652.150(1). ORS § 652.150 also provides that "[i]n no case shall the penalty wages or compensation continue for more than [thirty] days from the due date[.]" *Id.* § 652.150(1)(a).

Consistent with the authorities above, the Court concludes that Wright is entitled to a final paycheck penalty of $27,460.80 under ORS § 652.150. *See Hunter*, 2012 WL 3614336, at *3 & n.3 (awarding a thirty-day statutory penalty under ORS §§ 652.140 and 652.150, assuming that the plaintiff "worked the standard 40 hours per week, for a total of 2,080 hours per year," calculating "the $57.69 hourly wage by dividing [the plaintiff's] annual salary of $120,000 ($10,000 monthly salary x 12 months) by 2,080 hours (40 hours/week x 52 weeks)," calculating "daily penalty wages" by multiplying the hourly rate by "8 hours per day," and calculating the "maximum penalty wage amount" by multiplying the daily penalty wages "by 30 days"); *see also Villegas*, 2024 WL 1993988, at *3-5 (noting that the plaintiff's "agreed upon contract rate" was "$15.00 in exchange for each hour she worked" and using the formula "$15 per hour × 8 hours × 30 days" to arrive at the "ORS § 652.150 penalty for failure to pay wages upon termination"); *Rubi*, 2019 WL 720977, at *2-5 (awarding the plaintiff $2,880 in penalty wages under ORS § 652.150, i.e., the plaintiff's hourly rate of $12 multiplied by 240 hours worked in a thirty-day period).[5]

---

[4] The Court notes that Wright has alleged sufficient facts demonstrating willfulness. (*See* Second Am. Compl. ¶¶ 19-21, 24-25, alleging that "[a]t th[e] time" Wright submitted his April 16, 2021 resignation letter, Defendants "were fully aware of both [their] obligation to pay [Wright] and the amount [that they] owed" but still failed to pay Wright "any wages," and on May 8 and June 10, 2021, Wright's "counsel sent written notice of demand for nonpayment to Defendants"); *cf. Davis v. Laurel Med. Servs. Corp.*, No. 3:16-cv-01973-SI, 2018 WL 2105374, at *7 (D. Or. May 7, 2018) (addressing the sufficiency of the plaintiffs' willfulness allegations in the same context).

[5] Wright argues that he is entitled to an awards attorney's fees under ORS § 652.200, but adds that he "will file a separate petition for attorney's fees pursuant to [Rule] 54(d)(2) upon entry of the default judgment award." (Pl.'s Am. Mot. at 8, 10.) As a result, the Court does not

### C.    Minimum Wage Penalties

In addition to a final paycheck penalty, Wright seeks to recover "minimum wage penalties" under ORS §§ 652.150 and 653.055. (Pl.'s Am. Mot. at 8-10; Second Am. Compl. ¶¶ 33-35; *id.* at 12.) Relying on the above methodology and penalty amount of $27,460.80, Wright argues that he is entitled to $851,284.80 in minimum wage penalties. (Pl.'s Am. Mot. at 9-10, citing Second Am. Compl. ¶¶ 34-35.) Wright arrived at a total of $851,284.80 in minimum wage penalties by multiplying the thirty-day penalty wage amount of $27,460.80 by the thirty-one monthly pay periods in which Defendants failed to pay Wright any wages. (Second Am. Compl. ¶¶ 33-35.)

"An employer who fails to comply with either [ORS §§ 652.140 or 653.055's covered provisions] is subject to a civil penalty as calculated in [ORS §] 652.150."[6] *Solano v. Preciado*, No. 3:23-cv-01178-IM, --- F. Supp. 3d ---- , 2024 WL 3219127, at *4 (D. Or. June 28, 2024). Courts in this district have awarded plaintiffs civil penalties under both ORS §§ 652.140 and 653.055, and in doing so, rejected "potential issues of impermissible double recovery[.]" *Id.*; *see*

---

address attorney's fees at this stage of the proceedings. *Cf. Solano v. Preciado*, No. 3:23-cv-01178-IM, 2024 WL 3654958, at *1-3 (D. Or. Aug. 5, 2024) (granting in full the plaintiff's motion for attorney's fees and costs related to his previously granted motion for default judgment and noting that the "[c]ourt ha[d] the authority to award attorney's fees under each of the statutory schemes under which th[e] [c]ourt awarded damages" (citing, *inter alia*, OR. REV. STAT. § 652.200(2))); *Sanchez*, 2022 WL 1210947, at *3 (stating that the court would "determine any attorney fee and cost award after [the] [p]laintiff timely submit[ted] his fee petition").

[6] ORS § 653.025 "establishes a general minimum wage requirement for Oregon workers[.]" *Jones v. Four Corners Rod & Gun Club*, 456 P.3d 616, 620 (Or. 2020). ORS § 653.055 in turn provides that "[a]ny employer who pays an employee less than the wages to which the employee is entitled under ORS [§§] 653.010 to 653.261 or 653.272 is liable to the employee affected: (a) For the full amount of the wages, less any amount actually paid to the employee by the employer; and (b) For civil penalties provided in ORS [§] 652.150." OR. REV. STAT. § 653.055(1); *see also Cejas Com. Interior, Inc. v. Torres-Lizama*, 316 P.3d 389, 392 n.5 (Or. Ct. App. 2013) ("ORS [§] 653.055 creates a cause of action for enforcement ORS [§] 653.025[.]").

*also Villegas*, 2024 WL 1993988, at *4-5 (finding that the plaintiff did not seek a double recovery by requesting "two penalties" to "penalize two different types of employer misconduct: failing to pay what is minimally required as compensation for work performed in Oregon and failing to pay any wages earned and owing timely upon the earning employee's termination"); *Rubi*, 2019 WL 720977, at *5 (stating that the "[p]laintiff [was] . . . entitled to penalty wages of $2,880 pursuant to [ORS §] 652.140 and $2,880 pursuant to [ORS §] 653.055, as both statutes provide for the civil penalties described in [ORS §] 652.150," and thus awarding penalties under both statutes).

In some situations, however, courts in this district have found that penalty wage claims were based on the same or substantially similar employer misconduct and thus the plaintiffs were not entitled to the requested penalty. *See Durland*, 2022 WL 2704169, at *8 & n.10 (declining to award penalty wages for a claim under ORS § 652.140 because the court had "already assessed penalty wages under [ORS §] 653.055" and was "wary of awarding . . . a double recovery on a wage penalty theory that [was] substantially similar to [the] Oregon overtime claim," and declining a "request to award separate overtime damages under the FLSA because [it] would [have] amount[ed] to a double recovery"); *see also Davis*, 2018 WL 2105374, at * 7 ("[The] [p]laintiffs are seeking recovery under [ORS] § 652.140 for the same conduct for which they seek recovery under other statutes. [The] [p]laintiffs can only recover one penalty under Oregon law for the same employer misconduct. . . . Thus, [the plaintiff] cannot base this claim on his alleged overtime wages due, because that is the basis for his Oregon overtime statute claim. The [c]ourt, however, dismisses with prejudice [the] [p]laintiffs' prevailing wage claim as being [a federal statutory] claim under the guise of an Oregon statutory claim. Therefore, [this dismissal means that the plaintiff at issue] is not attempting to recover another penalty for the alleged

failure to pay a prevailing wage. [The] [d]efendants' argument that [the plaintiff at issue] has a simultaneous claim relating to failure to pay him prevailing wages at termination is rejected.") (simplified).

The *Solano*, *Villegas*, and *Rubi* decisions suggest that because Defendants failed to pay Wright the minimum (or any) wages, Wright is entitled to (1) thirty days of penalty wages ($27,460.80) under ORS §§ 652.140 and 652.150, and (2) thirty days of penalty wages ($27,460.80) under ORS §§ 652.150 and 653.055. In other words, Wright is entitled to one penalty for each claim.

*Solano* is an illustrative example supporting the conclusion that Wright is entitled to one penalty of $27,460.80 under ORS §§ 652.150 and 653.055, as a result of Defendants' failure to pay the minimum (or any) wages. In *Solano*, the plaintiff worked as a laborer at an agricultural business from August 8, 2021 through October 28, 2021. 2024 WL 3219127, at *2. "Despite being assured repeatedly that he would receive wages for his work, [the] [p]laintiff was not paid until late October 2021, almost three months into his employment." *Id.* The plaintiff "received only $800" but "estimate[d] that he worked 1,076 hours for [the] [d]efendant, 596 of which were overtime." *Id.*

At the default judgment stage, the district court addressed the plaintiff's damages and explained that based on the defendant's "violations of Oregon law, [the] [p]laintiff [sought] $3,060 as a penalty for [the] [d]efendant's failure to pay his wages and $3,060 as a penalty for [the] [d]efendant's failure to pay his wages when due upon termination."[7] *Id.* at *4. The district

---

[7] The *Solano* plaintiff appears to have calculated the $3,060 penalty wage by multiplying his hourly rate (i.e., the minimum wage rate of $12.75) by 240 hours (i.e., eight hours per day multiplied by thirty days of work). *See* OR. REV. STAT. § 652.150(1) (stating that "as a penalty for the nonpayment, the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is

court recognized that "[t]hese state law awards raise[d] potential issues of impermissible double recovery[.]" *Id.* The district court, however, explained that (1) "[w]here two separate statutory schemes provide for two separate remedies, each with its own purpose, an employer who violated both laws is liable for the penalties provided in each," (2) "[s]eparate penalties are thus available for the failure to pay minimum and overtime wages, which can occur during employment, and for the failure to pay wages due after termination, which occurs after the employment relationship has ended," and (3) such "penalties remedy two distinct statutory violations that arise out of different factual contexts and accrue at different times." *Id.* (simplified). For these reasons, the district court held that it was "appropriate for [the] [p]laintiff to recover punitive damages under these two provisions of Oregon law," and thus awarded a combined total of "$6,120 in penalties for [the] [d]efendant's violations of Oregon wage and hour laws." *Id.*

Similarly, in *Villegas*, the defendant agreed to pay the plaintiff "$15.00 in exchange for each hour" of work. 2024 WL 1993988, at *3. The plaintiff completed fifty-seven hours of work between December 7, 2020 to December 20, 2020, but as of the date of the district court's decision, the defendant had "not paid [the] [p]laintiff for any of the [the fifty-seven] hours that she worked." *Id.*

---

commenced" but "[i]n no case shall the penalty wages or compensation continue for more than 30 days from the due date"); *see also* OR. REV. STAT. § 653.025(1)(h) (reflecting that subject to certain exceptions, the minimum wage rate was $12.75 from July 1, 2021 to June 30, 2022). Unlike his first and second amended complaints, Wright's initial complaint sought a comparable penalty wage under ORS § 653.055. (*See* Compl. at 4-5, 7, ECF No. 1, listing the minimum wage rates, stating that "[t]he statutory penalty amount comes to $3,180," and seeking a "minimum wage penalty in an amount of at least $3,180"; *see also* Stevens Decl. Ex. 6 at 1-4, reflecting that in a letter to Defendants' former counsel, Wright's counsel stated that as of May 8, 2021, Wright was entitled to a final paycheck penalty of "$7,330.88" and the "same" amount of "$7,330.88" as a minimum wage penalty given the "eight days' worth" of accrued penalties and Wright's hourly rate of "$114.42," which equated to "$915.36 per [eight-hour] [work]day") (bold omitted).

At the default judgment stage, the plaintiff sought to "recover two penalties based on separate statutes: failure to pay minimum wages (ORS [§] 653.055) and failure to wages upon termination (ORS [§] 652.140)." *Id.* at *4 (footnote omitted). The district court stated that "[i]n this context, ORS [§] 652.140 and ORS [§] 653.055 represent separate theories of recovery," and emphasized that the plaintiff sought "to penalize two different types of employer misconduct: failing to pay what is minimally required as compensation for work performed in Oregon and failing to pay any wages earned and owing timely upon the earning employee's termination." *Id.* (simplified). The district court also explained that "[b]ecause [the plaintiff] was deprived of any payment at all, as opposed to merely a late payment that otherwise complied with minimum wage standards, [the district court's] ruling [was] not foreclosed by the [Oregon Court of Appeals'] holding [in] *Hurger v. Hyatt Lake Resort, Inc.*, 13 P.3d 123 (Or. Ct. 2000)." *Id.* For these reasons, the district court awarded the plaintiff, among other things, an "ORS § 652.150 penalty for failure to pay wages upon termination of $3,600.00 ($15.00 × 8 × 30)" and an "ORS § 652.150 penalty for failure to pay minimum wages of $3,600.00 ($15.00 × 8 × 30)[.]" *Id.* at *5.

Taken together, these decisions are persuasive and support the Court's conclusion that Wright is entitled to (1) thirty days of penalty wages ($27,460.80) under ORS §§ 652.140 and 652.150, and (2) thirty days of penalty wages ($27,460.80) under ORS §§ 652.150 and 653.055. That is to say, Wright is entitled to one penalty for each of his distinct statutory claims. *See Rubi*, 2019 WL 720977, at *5 ("[The] [p]laintiff is . . . entitled to penalty wages of $2,880 pursuant to [ORS §] 652.140 and $2,880 pursuant to [ORS §] 653.055, as both statutes provide for the civil penalties described in [ORS §] 652.150.").

///

Wright requests that the Court award the thirty-day penalty amount ($27,460.80) for each of the thirty-one monthly pay periods in which he was not paid a minimum wage, for a total of $851,284.80 in minimum wage penalties.[8] However, Wright fails to meet his burden of demonstrating that he is entitled to more than one thirty-day penalty for his minimum wage claim. *See Stravrum v. NW Precision Constr., LLC*, No. 21-01761-SB, 2022 WL 16798577, at *5 (D. Or. Oct. 14, 2022) (explaining that at the default judgment stage, the moving party "bears the burden of demonstrating his entitlement to damages in the requested amount" (citing *Szabo v. Sw. Endocrinology Assocs. PLLC*, No. 20-01896, 2021 WL 3411084, at *1 (D. Ariz. July 27, 2021))).

Wright does not cite any case law demonstrating his entitlement to minimum wage penalties in the requested amount or that courts have awarded comparable penalties under similar circumstances.[9] *Cf. Russell v. U.S. Nat'l Ass'n*, 265 P.3d 1-3 & n.1 (Or. Ct. App. 2011) (noting

---

[8] The *Solano* plaintiff did not appear to argue that he was entitled to multiple penalties stemming from the three month period in which the defendant violated Oregon wage and hours laws, but it is still noteworthy that the district court considered potential issues related to double recovery and awarded the plaintiff one thirty-day penalty for his claim under ORS §§ 652.150 and 653.055. The district court awarded similar penalty wages in the *Rubi* decision. *See* 2019 WL 720977, at *2-5 (awarding two equivalent thirty-day penalty wage amounts of $2,880 under ORS §§ 652.140, 652.150, and 653.055, and noting that the "[p]laintiff worked for [the] [d]efendants from approximately September of 2015 to August of 2016," the plaintiff "accepted a starting wage rate of $12.00 an hour to be paid every two weeks," the plaintiff "timely performed the work requested by [the] [d]efendants, but they did not pay the agreed-upon rate," the plaintiff "did not receive regular pay checks but instead was paid intermittently, often less than the agreed-upon rate," the "[p]laintiff was not paid at all" during "[s]ome months," and as of the date of the district court's decision, the defendants had "failed to pay [the] [p]laintiff all wages earned").

[9] Further, Wright filed this case on January 27, 2022 and his multiple penalties theory is based on monthly pay periods "starting [on] October [1,] 2018" (Second Am. Compl. ¶¶ 13, 17, 34), but Wright does not address the timeliness of his requested thirty-one months of penalties and it appears that he may be time barred from recovering penalties for certain months. *See generally Russell*, 265 P.3d at 1, 2-4 & n.3 ("[The] [p]laintiff's claim for 30 days' penalty wages did not accrue until the thirtieth day following the day on which [the] plaintiff's earned wages allegedly were due and unpaid. Not counting [an undisputed] tolling period, [the] plaintiff filed

PAGE 27 – FINDINGS AND RECOMMENDATION

that the plaintiff alleged that her former employer violated ORS § 652.140 by failing timely to

pay her earned wages, addressing the "question whether an employee who sues for penalty

wages under ORS [§] 652.150 has a single claim for the total amount of penalty wages the

employer allegedly owes, or instead has up to [thirty] separate claims—each for one day of

penalty wages—corresponding to each of the days on which the employer continued not to pay

the employee's earned wages" and stating that "[a]lthough the text of ORS [§] 652.150 does not

make the point explicitly, [the Oregon Court of Appeals] believe[d] that the statute's wording

reflect[ed] a legislative intent to create a single, unitary claim for penalty wages," in part because

of the "[t]he legislature's use of the article 'a' followed by the singular noun 'penalty'").

For these reasons, the Court declines to recommend that the district judge award Wright

thirty-one months of minimum wage penalties ($851,284.80) under ORS §§ 652.150 and

653.055; instead, the Court recommends the district judge award Wright thirty days of penalty

wages ($27,460.80) for his minimum wage claim.

### D.    ABNA Penalty

Wright requests "an assumed business name penalty in an amount of $500." (Pl.'s Am.

Mot. at 10.) Wright has sufficiently alleged and demonstrated that his suit against Defendants

arises in part out of, and relates to, business that Defendants conducted as an unregistered entity

(Violet Power) in violation of the ABNA. Thus, the Court concludes that Wright is entitled to

$500 in statutory damages under his ABNA claim. *See Schaefer*, 2017 WL 6887099, at *3

(calculating damages at the default judgment stage, observing that the "[p]laintiff request[ed]

$500 in statutory damages arising out of [the] [d]efendant's failure to register its business name,

---

her complaint within three years of that date. Accordingly, the trial court erred when it dismissed
[the] plaintiff's claim as time barred.").

in violation of Oregon law," and determining that the "[p]laintiff's request is authorized by [ORS §] 648.135").

### E.     Wright's Consulting Agreement

Wright seeks a "breach of contract award of $60,000" based on his outstanding invoices and consulting services-related agreement with Defendants. (Pl.'s Am. Mot. at 10; Second Am. Compl. ¶ 46; *id.* at 12.) The Court concludes that Wright is entitled to $60,000 given his agreement and invoices. *See Garcia*, 2016 WL 526236, at *3-4 (addressing the plaintiff's contract claim against the defaulting defendant and awarding the agreed-upon reimbursement amount).

### F.     Pre-Judgment and Post-Judgment Interest

With respect to his state law claims, Wright states that he is entitled to "pre-judgment interest at nine percent per annum pursuant to ORS [§] 82.010[.]" (Pl.'s Am. Mot. at 8-9, citing Second Am. Compl. ¶ 26.) Wright also seeks "post-judgment interest pursuant to 28 U.S.C. § 1961." (*Id.* at 9-10; *see also* Second Am. Compl. ¶ 36, seeking "pre- and post-judgment interest").

The Court agrees that under ORS § 82.010 and with respect to his state law claims, Wright is entitled to nine percent "prejudgment interest running on all moneys after they become due." *See Durland*, 2022 WL 2704169, at *8-9 (stating the same about the plaintiffs' "state law claims" (citing OR. Rev. Stat. § 82.010(1)(a))); *LL Liquor, Inc. v. Montana*, 835 F. App'x 917, 919 (9th Cir. 2020) ("Generally, in actions within a district court's supplemental jurisdiction, state law determines the rate of prejudgment interest, and postjudgment interest is governed by federal law.") (simplified). The Court also agrees that under the circumstances presented here, "[p]ost-judgment interest [should] accrue on all amounts awarded beginning on the first day after entry of judgment at the interest rate set forth at 28 U.S.C. § 1961." *Stravrum*, 2022 WL

PAGE 29 – FINDINGS AND RECOMMENDATION

16798577, at *7; *see also LL Liquor, Inc.*, 835 F. App'x at 919 ("Federal law provides for interest on money judgments in civil cases at the rate prescribed in 28 U.S.C. § 1961. But an exception to § 1961 exists when the parties contractually agree to waive its application.") (simplified).

Wright has not provided a proposed calculation of the prejudgment interest owed on his state law claims. Wright will also have an opportunity to object to this Court's opinion, which could impact the district judge's final decision regarding the total damages award. Thus, the Court recommends that the district judge order Wright to prepare and file a proposed form of judgment and, if necessary, file a supporting declaration setting forth his interest calculation. *See Lunceford*, 2023 WL 9179204, at *4 (granting in part a motion for default judgment and stating that the "[p]laintiff shall prepare a proposed form of judgment and file it with the [c]ourt within two weeks from the date of this Order"); *Durland*, 2022 WL 2704169, at *9 ("Taking this [c]ourt's ruling into consideration, [the] [p]laintiffs are ordered to submit a supplemental declaration with their calculation of the prejudgment interest owed on their state law claims.") (all caps omitted).

## CONCLUSION

For the reasons stated, the Court recommends that the district judge GRANT IN PART and DENY IN PART Wright's amended motion for default judgment (ECF No. 40), and enter judgment awarding damages in the amount of (1) $617,884.62 in unpaid wages, (2) $27,460.80 in penalty wages under ORS §§ 652.140 and 652.150, (3) $27,460.80 in penalty wages under ORS §§ 652.150 and 653.055, (4) $60,000 in contractual damages, (5) $500 in statutory damages under the ABNA, (6) prejudgment and postjudgment interest, and (7) attorney's fees and costs upon application.

///

**SCHEDULING ORDER**

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 13th day of September, 2024.

_____
**HON. STACIE F. BECKERMAN**
United States Magistrate Judge