IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RUSSELL WRIGHT**, | Case No. 3:22-cv-151-SB |
| Plaintiff, | **ORDER** |
| v. | |
| **VIOLET ENERGY, INC.,** and **DESARI STRADER**, | |
| Defendants. | |

**Michael H. Simon, District Judge.**

United States Magistrate Judge Stacie F. Beckerman issued Findings and Recommendation in this case on September 13, 2024. Judge Beckerman recommended that this Court grant in part Plaintiff's amended motion for default judgment. Judge Beckerman concluded that Plaintiff cured the defects previously identified by the Court and stated a claim under the Fair Labor Standards Act ("FLSA") in his Second Amended Complaint, as well a state law claim alleging Breach of Contract. Judge Beckerman then analyzed the factors for granting a default judgment and calculating damages, and recommended granting default judgment and awarding a portion of the damages requested by Plaintiff, as well as prejudgment and post-judgment interest.

PAGE 1 – ORDER

Under the Federal Magistrates Act ("Act"), the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If no party objects, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985). Although review is not required in the absence of objections, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Id.* at 154. The Court reviews the Findings and Recommendation *de novo*, and declines to adopt the Findings and Recommendation. For the reasons discussed below, the Court grants in part Plaintiff's amended motion for default judgment.

**A.  Standards**

Under Rule 55(a) of the Federal Rules of Civil Procedure, the Clerk of the Court is required to enter an order of default if a party against whom affirmative relief is sought fails timely to answer or otherwise defend an action. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Upon the entry of default, the Court accepts "the well-pleaded factual allegations" of the complaint "as true." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (quoting *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992)); *see also Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The Court, however, does not accept as admitted facts that are not well-pleaded, conclusions of law, or facts relating to the amount of damages. *DIRECTV*, 503 F.3d at 854; *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008).

After default has been entered against a defendant, a court may enter a default judgment against that defendant. *See* Fed. R. Civ. P. 55(b). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980);

*see also Dreith v. Nu Image, Inc.*, 648 F.3d 779, 786 (9th Cir. 2011) (noting that a district's court decision whether to enter a default judgment is reviewed for abuse of discretion). In *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit set out factors to guide a district court's consideration of whether to enter a default judgment. *See DIRECTV*, 503 F.3d at 852 (noting that *Eitel* "set[] out factors to guide district court's determination regarding the appropriateness of granting a default judgment").

The Ninth Circuit in *Eitel* held:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72 (punctuation in original). The "starting point" of the court's analysis, however, "is the general rule that default judgments are ordinarily disfavored." *Id.* at 1472.

**B. Background**

Plaintiff asserts claims under the FLSA for violations of unpaid minimum employee wages, state law claims for unpaid minimum wages and wages upon termination, state law breach of contract claims for money owed to him as an employee and independent contractor, and a state law claim under Oregon's Assumed Business Name Act ("ABNA"). On September 26, 2022, the Court entered an order of default on Plaintiff's original complaint against Defendant Violet Energy, Inc. ("Violet"). ECF 18. On November 22, 2022, the Court entered an order of default on Plaintiff's original complaint against Defendant Desari Strader ("Strader"). ECF 21. Notwithstanding those entries of default, Plaintiff filed a First Amended

Complaint ("FAC") on September 11, 2023. ECF 22. The Court then entered default against both Defendants on the First Amended Complaint on November 13, 2023. ECF 27.

In January 2024, Plaintiff moved for default judgment. ECF 31. Judge Beckerman recommended denying Plaintiff's motion and dismissing his FAC without prejudice, but without leave to amend in federal court. ECF 35. Specifically, Judge Beckerman recommended denying Plaintiff's motion with respect to his FLSA claims because he failed to allege any specific work week in which he worked any hours and was not paid a minimum wage. Judge Beckerman also noted that Plaintiff's allegations in the FAC appeared to support that he worked as an independent contractor for part of the time and showed at least a factual dispute regarding whether he was an employee or an independent contractor. Judge Beckerman then recommended that the Court decline supplemental jurisdiction over Plaintiff's state law claim.

Plaintiff objected, arguing that the FAC was sufficiently specific as to his hours worked to support a minimum wage claim and was clear about when he transitioned from an independent contractor to an employee. ECF 37. The Court rejected Plaintiff's objections. The Court adopted in part the Findings and Recommendation, dismissed Plaintiff's FLSA claim, declined supplemental jurisdiction over his state law contract claim, but allowed Plaintiff to file a Second Amended Complaint and Amended Motion for Default Judgment. ECF 38. Plaintiff timely filed his Second Amended Complaint ("SAC"), ECF 39, and revised Motion for Default Judgment. ECF 40.

## C. Analysis

"Because the decision to grant default judgment is at the sole discretion of the Court, the Court may render judgment based on an assessment of the second and third *Eitel* factors alone." *GS Holistic, LLC v. Ravens Smoke Shop, Inc.*, 2023 WL 5504964, at *3 (C.D. Cal. July 10, 2023) (citing *Aldabe*, 616 F.2d at 1092); *Bailey v. HVSN Enters. Inc.*, 2021 WL 794501, at *2

(C.D. Cal. Mar. 2, 2021) ("The second and third *Eitel* factors alone demonstrate that default judgment is improper, and the Court need not assess the remaining factors."). The Court thus focuses on the sufficiency of the allegations in the SAC and the merits of Plaintiff's claims.

### 1. Claims Against Strader

Plaintiff moves for a default judgment on his claims not only against Violet Energy, Inc. but also against Strader personally. Plaintiff does not allege facts regarding Strader's connection to Violet such as whether she was its owner, President, or Chief Executive Officer. The only facts alleged relating to Strader are that: (1) the alleged acts took place at "the listed address for Defendant Desari Strader ("Strader") with the Oregon Secretary of State for Defendant Violet Energy, Inc. ("Violet")"; (2) Plaintiff worked for Strader and Violet at Violet Power (this is a *legal conclusion* that the Court does not accept as true); (3) Strader sent Plaintiff an employment offer letter on or about August 28, 2018; and (4) "Strader is personally liable for the back wages needed to make the wages meet minimum wage" (this also is a *legal conclusion* the Court does not accept as true). The well pleaded allegations are insufficient to support any claim against Strader or show that she has personal liability for the claims against Violet Energy, Inc. The Court thus denies Plaintiff's motion for default judgment on the claims against Strader.

### 2. Claims Against Violet

#### a. Employment based claims

Plaintiff's state law and FLSA wage claims and state law employment contract claim against Violet are based on Plaintiff's status as an employee. *See* Or. Rev. Stat. §§ 652.140 (providing a claim for an "employee" who was not timely paid wages upon termination); 653.025 (establishing a minimum wage for an "employee"); 29 U.S.C. § 206 (establishing a minimum wage for "employees"); 29 U.S.C. § 203(e)(1) (defining "employee" for purposes of

the FLSA). Thus, the threshold analysis for these claims is whether Plaintiff was an employee of Violet.[1]

Plaintiff alleges that he was an employee pursuant to an employment contract. He alleges that he accepted the employment offer letter sent to him by Violet. Both of these allegations, however, are legal conclusions that the Court does not accept as true despite the default of Violet.

"Whether a contract existed is a question of law." *Ken Hood Constr. Co. v. Pac. Coast Constr., Inc.*, 201 Or. App. 568, 577 (2005), *opinion adhered to as modified on reconsideration*, 203 Or. App. 768, (2006). "Oregon subscribes to the 'objective theory' of contract formation, under which the question of whether a contract has been formed depends on whether the parties have manifested mutual assent through their writings, words, or actions." *Wall St. Mgmt. & Cap., Inc. v. Crites*, 274 Or. App. 347, 358 (2015). "[T]he law requires only evidence of 'mutual assent,' whether that assent is expressed through an offer and an acceptance or is manifested by conduct." *Bennett v. Farmers Ins. Co. of Or.*, 332 Or. 138, 153-54 (2001).

Plaintiff simply alleges that he "accepted" the offer of employment by Violet, which was an offer by letter. He does not allege how he accepted the offer of employment, such as by accepting in writing or accepting by conduct. The text of the offer letter itself requires that, for the offer to be accepted, the offer letter must be signed. Plaintiff, however, provides only an

---

[1] The Court's previous FLSA analysis resolved Plaintiff's objections to the previous Findings and Recommendation and did not focus on Plaintiff's status as an employee because that was not the basis of the previous Findings and Recommendation. The Court did comment in a footnote about the apparent lack of evidence regarding Plaintiff's status as an employee, although the Court stated it was relevant to Plaintiff's breach of contract claim and not his FLSA claim, because the dismissal of Plaintiff's FLSA claim was not related to his status as an employee. The Court's current *de novo* analysis, however, is focused on Plaintiff's status as an employee, which is a requirement for his statutory claims and his breach of employment contract claim.

unsigned copy as evidence of the contract. In his declaration submitted with his motion, Plaintiff similarly only states that he accepted the offer of employment without stating how he accepted the offer. Plaintiff states that he began working as a salaried employee and *at the same time he also worked* as an independent contractor as a consultant and invoiced Violet as an independent contractor. Plaintiff, however, must provide some evidence that he was an *employee* and that there was a meeting of the minds between he and Violet regarding his employment status.

Plaintiff provides a cover letter from June 24, 2021, from Violet's then-counsel, stating that Plaintiff's "personnel file" is enclosed. The personnel file contains an unsigned Employee Non-Disclosure Agreement, which is referenced in Violet's offer letter as a document the signing of which Plaintiff's employment would be contingent upon. That it is unsigned supports a finding that Plaintiff did not accept the offer of employment in 2018 and was not an employee at that time. His personnel file also does not contain the references and background check documents cited in the offer letter as additional documents for which his employment would be contingent upon. The personnel file includes Plaintiff's completed W-4, direct deposit, and I-9 forms, but they are dated in January 2021, three years later. This at best would support a finding that Plaintiff accepted some type of employment in January 2021. His personnel file also contains the invoices he sent as an independent contractor consultant, reflecting that he worked as an independent consultant from September 2018 through March 2019.

Plaintiff's personnel file also includes his communication to Violet on April 16, 2021, in which he purportedly resigned his employment. He stated that he is an employee who was owed $238,000 per year since 2018 but was not paid despite performing his employment obligations. This communication, however, is Plaintiff's unilateral understanding of his employment status and is not evidence of mutual assent. He does not provide any response from

Violet acknowledging Plaintiff's employment status or other communication in which he is acknowledged as an employee.

Plaintiff provides numerous general business emails, almost all of them to or from his personal Gmail account. Because he worked as an independent contractor, discussed further below, these emails do not show that he was an employee. He never signs any email with his purported title of "Senior Vice President," or even with the company name, unlike other Violet employees, such as Strader, who signed emails with her company title. There are several emails in which *Plaintiff* forwards the email from his Gmail to an email account assigned to him at Violet's domain (russw@violetpower.com). Several of those show that the underlying email was from Strader and sent to several persons at Violet, all to Violet email addresses, with only Plaintiff's email being his personal email address. These emails do not support that Violet considered Plaintiff an employee, and actually show the opposite, because Strader was sending communications to Plaintiff's personal email. Plaintiff also offers two redacted emails sent from outside persons to Plaintiff's Violet email address, along with Strader, among other recipients. Both of these emails, however, were forwarded by Strader to Plaintiff's personal email address. This shows that Strader considered Plaintiff's personal email address to be his better contact than his Violet email address. These two emails do not show that Violet considered Plaintiff an employee.

Finally, Plaintiff offers as evidence of the contract of employment what appears to be a screenshot of an Excel document titled "Violet Power Contacts March 15th 2021." Among the contacts, Plaintiff is listed as "Sr. VP Strategic Solutions Project Develop." There is no authentication of this document or indication of on what computer this document resided. Further, this document was dated after January 2021 and could provide additional support that

there was a change in Plaintiff's relationship with Violet in 2021, but it provides no evidence of his employment status in 2018.

Plaintiff also does not provide a signed copy of the 2018 offer letter indicating his acceptance per the offer's terms (a written acceptance). As stated, Plaintiff does not allege how he accepted the 2018 offer, that he complied with its other terms (such as signing the Employee Non-Disclosure Agreement), or that there was mutual assent between he and Violet that he was an employee beginning in 2018. Further, as discussed below, Plaintiff provides evidence that he worked *on retainer* beginning in 2018 as a consultant, payment that was not tied to hours worked, which is inconsistent with working at the same time as a salaried executive employee. At best, Plaintiff offers evidence of a possible employment relationship beginning in January 2021, with his resignation in April 2021. But there is no evidence of the terms of that possible employment relationship.

Accordingly, Plaintiff has not sufficiently shown that that the parties entered into a binding employment contract. The Court declines to enter default judgment on Plaintiff's claims under Oregon Revised Statutes §§ 652.140 and 653.025 and the FLSA, which require that Plaintiff be an employee, and Plaintiff's state law breach of contract claim based on the alleged employment contract.

### b. Breach of consulting contract

Plaintiff also alleges that he performed consulting work as an independent contractor, pursuant to an agreement that predated his employment. He states in his declaration that as a consultant he worked 25 hours in September 2018, 25 hours in October 2018, 25 hours in November 2018, 22 hours in December 2018, 18 hours in January 2019, and 18 hours in March 2019. He provides copies of invoices he sent to Violet. The invoices also were in the personnel file of Violet.

The invoices reflect that beginning in September 2018, Plaintiff charged Violet a "monthly retainer" of $10,000. His consultancy fee did not appear to be related to his hours worked. He charged $10,000 for each month, from September 2018 through March 2019, even though he states that he worked different hours, ranging from 18 to 25 (he also charged $10,000 for February 2019, even though he does not state that he worked *any* hours in February 2019). His invoices reflect a total charge of $70,000[2] for September 2018 through April 2019, with a $40,000 payment by Violet.[3] This leaves an outstanding balance of $30,000.

Plaintiff sufficiently states a claim that he worked as an independent contractor for Violet. Violet paid $40,000 in response to Plaintiff's invoices for consulting work. Violet also engaged in significant business communications with Plaintiff through his personal email and forwarded business communications to Plaintiff's personal email, which is consistent with working with Plaintiff as a consultant. Violet also provided Plaintiff with a Violet email address, which the evidence shows was used only intermittently, which also is consistent with a consultant working on monthly retainer to help with business development.

Although Plaintiff does not provide a signed consultant agreement, he provides sufficient evidence that he performed work as a consultant and Violet paid him in part for that work. He invoiced Violet for the remainder of his work and Violet did not respond by rejecting the invoice

---

[2] There is an accounting error in Plaintiff's March 2019 invoice. He includes in his "outstanding delinquent balance" accounting $10,000 for March 2019 while also charging $10,000 as the current month's (March 2019) balance. He thus double charged $10,000 for March 2019 in that invoice, resulting in a past due amount of $60,000 when it should have been $50,000 (seven months times $10,000 is $70,000, minus the $20,000 payment from Violet accounted by Plaintiff leaves $50,000).

[3] Plaintiff provides evidence of two $20,000 payments from Violet to Plaintiff. Plaintiff alleges that Violet paid only $20,000, but his evidence shows that Violet made two $20,000 transfers, which equals $40,000. The Court does not accept as true allegations relating to damages. The Court instead accepts the evidence submitted by Plaintiff of Violet's payment.

or disputing the work or the consultancy relationship. A reasonable business would be expected
to send a dispute (and include it in the "personnel file" along with the invoices) if there was no
consultancy relationship or agreement to pay a monthly retainer fee. Thus, Plaintiff provides
sufficient evidence of his consultancy agreement and his damages. Consideration of the
remaining *Eitel* factors also supports entry of default judgment. The Court grants default
judgment on Plaintiff's breach of consultancy agreement in the amount of $30,000.

### c.   Assumed business name violation

Under Oregon's ABNA, "a person must register an assumed business name in order to
conduct business in that assumed name." *Covelli v. Avamere Home Health Care LLC*, 2020
WL 6395448, at *5 (D. Or. Nov. 2, 2020) (citing Or. Rev. Stat. § 648.007). The ABNA
"provides for statutory damages of $500 or actual costs that 'the plaintiff reasonably incurred to
ascertain the real and true name of the defendant' when a cause of action arises out of business
the defendant conducted as an unregistered entity in violation of the ABNA." *Id.* (quoting Or.
Rev. Stat. § 648.135(2)).

Plaintiff alleges that Violet is an unregistered assumed business name. As discussed,
Plaintiff also sufficiently alleges that he did business with Violet as an independent contractor
consultant and has a breach of contract claim for failure to pay his $10,000 monthly retainer,
which arises out of business Violet conducted as an unregistered entity. Plaintiff thus sufficiently
states a claim under the ABNA. Consideration of the *Eitel* factors supports entry of default. He is
entitled to the statutory damages requested of $500, plus attorney's fees related to this claim. *See*
Or. Rev. Stat. § 648.135(2); *see also Schaefer v. Invents Co.*, 2017 WL 6887099, at *1, *3 (D.
Or. Dec. 15, 2017), *findings and recommendation adopted*, 2018 WL 358498, at *1 (D. Or.
Jan. 10, 2018).

**D.  Conclusion**

The Court declines to adopt the Findings and Recommendation, ECF 44. The Court

GRANTS IN PART and DENIES IN PART Plaintiff's amended motion for default judgment,

ECF 40. The Court denies default judgment against Defendant Desari Strader. The Court grants

default judgment against Defendant Violet Energy on Plaintiff's claim for breach of his

consultancy agreement, in the amount of $30,000, and breach of Oregon's Assumed Business

Name Act, in the amount of $500, and denies default judgment on all other claims. Plaintiff is

entitled to reasonable attorney's fees on his ABNA claim and prejudgment interest on his

contract claim. Plaintiff shall file a proposed form of judgment within two weeks of the date of

this Order.

**IT IS SO ORDERED.**

DATED this 14th day of November, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge